**STATE v. WYNNE et al.**

No. 13632.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 14, 1938.

Rehearing Denied Feb. 11, 1938.

William McCraw, Atty. Gen., and Pat M. Neff, Jr., Asst. Atty. Gen., for the State.

Julius H. Runge, of Dallas, for appellee A. M. Lockett & Co., Ltd.

Wynne & Wynne, of Wills Point, for appellee B. J. Wynne.

Julius H. Runge, of Dallas, and Robert Sansom, of Fort Worth, for appellee James Harrison.

Geo. M. Conner, of Fort Worth, for appellee R. F. Milam, trustee.

Wren, Pearson & Jeffrey, of Fort Worth, for appellee A. T. & S. F. Ry. Co.

Massingill & Belew, Homa Hill, and B. B. Paddock, all of Fort Worth, for appellee W. B. Harrison.

Clyde O. Eastus, U. S. Atty., and Frank B. Potter, Asst. U. S. Atty., both of Fort Worth, and J. L. Backstrom, Sp. Atty., Bureau of Internal Revenue, of Dallas, for the United States.

Wynne & Wynne, of Wills Point, for appellees Herman Gartner, C. L. Wilson, Bert K. Smith, Oscar Vogel, W. M. Harrison, Clara Mabry, Myrtle Moad, Joe King, J. B. Craddock, Guardian, and J. B. Moon.

Harris & Palmer, of Dallas, for appellee Centennial Oil & Gas Co.

Samuels, Foster, Brown & McGee, and A. M. Herman, all of Fort Worth, for appellees Jean Craddock Lewis et al.

DUNKLIN, Chief Justice.

This suit was instituted by B. J. Wynne on May 12, 1935, against the Star Refining & Producing Company, to recover on its promissory note, in the principal sum of $2,000, of date September 22, 1932, payable 90 days after date, with interest and attorney's fees, and to foreclose the mortgage lien upon all the real property and other assets of the defendant, located in the county of Tarrant, State of Texas, given by defendant to secure twenty five-year first mortgage 8 per cent. bonds that were hypothecated to plaintiff at the time said note was executed as security therefor. Plaintiff alleged that the defendant is indebted to the federal government for taxes in the sum of $12,000, and to the State of Texas for gasoline taxes in the sum of approximately $18,000; and that the defendant is insolvent or threatened with insolvency and without means to pay said taxes, since its capital stock and surplus on hand has been exhausted and it has no cash assets with which to pay its debts.

Further allegations were to the effect that the market for defendant's refined products has been broken by competition with dealers in "hot oil," operating in violation of the law, and by reason thereof, it has been impossible now to refine crude oil with profit and thus realize funds to pay its indebtedness by further operating its business.

It was further alleged that the federal and state governments were both threatening to file liens against the defendant's assets and thus further jeopardize the interests of all holders of the series of five-year first mortgage 8 per cent. bonds, which include the twenty, now held by plaintiff as collateral security for the note in suit. By reason of the facts noted, plaintiff prayed for immediate appointment of a receiver to take charge of the defendant's property and hold it, subject to orders of court.

The petition was duly verified, and on the same day of its filing the defendant filed its answer thereto, entering its appearance, waiving any notice of hearing of the application, and also praying for appointment of a receiver, upon allegations of the same facts with extended elaboration of details.

Immediately upon the filing of the petition and answer, Hon. G. O. Crisp, judge of the court in which the suit was instituted, filed his order, appointing W. M. L. Johnson receiver to take charge of the property and hold the same until further orders from the court, and requiring the receiver to file bond in the sum of $2,000, conditioned as required by law.

The receiver so appointed duly qualified by giving the prescribed bond and taking the necessary statutory oath and took charge of all assets belonging to the defendant.

The federal government filed its claim of prior and superior lien under its internal revenue laws, on the assets of the defendant company in the hands of the receiver, for gasoline taxes, together with proof of filing with the county clerk of

Tarrant county notice of its claim of lien therefor.

The State of Texas intervened for occupation taxes owing by the defendant company as a distributor of gasoline, under provisions of article 7065a, Vernon's Ann. Tex.Civ.St., Acts 1929, 2d Called Sess., c. 88, § 17, as amended by Acts 1931, c. 98, § 2, with a claim of lien on the property in the receiver's hands and described in the judgment, prior and superior to the lien of the federal government and to the claims of all other interveners.

The names of other interveners and claims asserted by them appear in the judgment.

The case was tried without a jury, and following is a copy of the judgment rendered on June 30, 1936, omitting certain unnecessary repetitions:

"1. The Court overrules the demurrer and denies the motion to strike and dismiss filed herein by the State of Texas as to the amended claim of the United States, allowing the State of Texas' exception thereto. The court also overrules all other preliminary pleas, demurrers and exceptions filed to any of the claims considered herein.

"2. All of the claims set forth herein were presented to the receiver prior to the date of this hearing, and were approved and allowed by the receiver in the amounts claimed.

"3. On the 12th day of March, 1932, A. M. Lockett & Company, Ltd., a corporation, sold to the defendant, Star Refining & Producing Company, the following described personal property:

"1 Worthington 20 x 6 x 24 horizontal simplex outside end packed plunger hot oil pump.

"1 Worthington 8 x 4 x 12 simplex pot valve type steam pump.

"1 Worthington 1-1/2" Type U-1 two-stage, horizontal split case, volute centrifugal pump.

"1 7-1½ HP General Electric Type Ft, 440 volt, 3 phase, 60 cycle, 3600 RPM standard high reactance, squirrel cage induction motor.

"1 CR-7006-D40 full voltage magnetic starter furnished with overload protection.

"Said sale was evidenced by a written contract, introduced in evidence in this case, in which title was retained by the seller in it until said property should be fully paid for, and said contract was filed for record in the chattel mortgage records of Tarrant County, Texas, the county in which the property was to be situated, on the 18th day of April, 1932.

"4. On April 26th, 1932, the defendant and intervener, Lockett & Company, entered into a supplemental written contract, in which also the title to the property above described was retained, and the real estate on which the property was to be situated and described, and this instrument was filed for record in Tarrant County, Texas, on the 5th day of May, 1932, in duplicate, and one copy was filed by the county clerk in the chattel mortgage records of machinery on realty, and one copy was filed in the chattel mortgage records of said county.

"5. Said original indebtedness, evidenced by notes, and secured by the chattel mortgage and mortgage on machinery situated on realty held by the intervener, Lockett & Company, has not been paid in full, but certain payments have been made, and at the special instance and request of the defendant, certain renewal notes were executed by the defendant, and accepted by the intervener, Lockett & Company, but there was no change in the mortgages mentioned. The notes now held by the intervener represent an extension of the original indebtedness and were taken in extension and in renewal, and in lieu of the original notes, and the original indebtedness has never been released by the intervener, and there is no evidence before this court of any intention to release or to waive the indebtedness or lien held by this intervener, but on the contrary all the evidence indicates that the intention was to retain the lien to secure the payment of the notes accepted in renewal of the original indebtedness. The indebtedness has been reduced to a comparatively small amount from the original amount contracted to be paid. The amount of the debt now owing by the defendant to A. M. Lockett & Company, Ltd., as evidenced by the notes given for said machinery and property, is as follows: $525.00 principal, $102.37 interest to July 1, 1936, and 10% attorney's fees on the full amount of principal and interest, making the total amount due on July 1st, 1936, of $690.10. Said intervener has a chattel mortgage lien upon the property described above, and a lien on machinery situated on realty on the property above described to satisfy its indebtedness

in the amount above stated, and said liens are prior and superior to all other liens asserted in this case against the property above described.

"6. The defendant entered into a written agreement with the intervener, A. M. Lockett & Company, Ltd., dated April 26th, 1932, by the terms of which the defendant pledged with intervener eighteen 5-year first mortgage eight per cent gold bonds, dated July 1st, 1928, and pledged said bonds as collateral security for the payment of said indebtedness above mentioned, and later these bonds were exchanged at the request of the defendant for a like amount of bonds of the issue dated June 1st, 1933, that amount being $1800.00, par value of said bonds, and the intervener is entitled to a foreclosure of its pledgee's lien upon said bonds at this time, said bonds being numbers 36 to 53, both inclusive, being each for the principal amount of $100.00 and being known as 5-year first mortgage eight per cent gold bonds, dated June 1st, 1933, payable to bearer, and being executed by Star Refining & Producing Company.

"7. The Court therefore orders, adjudges and decrees that said intervener, A. M. Lockett & Company, Ltd., have judgment against Star Refining & Producing Company, a corporation, and against its receiver, W. M. L. Johnson, for the amount of its debt, principal, interest, and attorney's fees, in the amount above set forth, and all costs of court, with interest from the 1st day of July, 1936, on the above amount at the rate of six per cent per annum. That said intervener have judgment foreclosing its chattel mortgage lien and its lien on machinery situated on realty upon the personal property above described, and that it have judgment of foreclosure of its pledgee's lien dated April 26th, 1932, upon the bonds above described, and that said property be sold in satisfaction of said indebtedness, the machinery and equipment being sold first, and if a sufficient amount is not realized from said sale to satisfy the indebtedness, that said bonds be then sold to satisfy said indebtedness. That said sales be conducted by the receiver at private sale, and that said intervener be allowed to bid at said sale, and to credit on its bid the amount of its indebtedness above set forth, and that the purchaser at said sale be allowed to remove said machinery and equipment from the premises on which it is now situated at any time within 30 days from the date of said sale. That if said property is bid in by

anyone other than said intervener, that the receiver pay to said intervener the amount of its claim, as above set forth.

"8. It is further ordered, adjudged and decreed that the receiver may, at his discretion, redeem said property from said intervener by paying to said intervener the amount of its claim, as above set forth, and taking a release from it of its liens and accepting from it a delivery of the bonds which it holds as collateral security for said indebtedness, but that the receiver shall exercise said right to redeem within 60 days from the date of the entry of this order.

"9. James Harrison made a loan of money to the Star Refining & Producing Company on June 1st, 1928, in the sum of $14,000.00, and in consideration of the loan of that amount of money, said defendant executed its promissory note payable to him in the principal sum of $14,000.00 and gave him a chattel mortgage lien upon nineteen tank cars belonging to the defendant, and described in detail in said chattel mortgage. Thereafter, as payments were made by the defendant to intervener Harrison, certain tank cars were released and said intervener then had a chattel mortgage lien upon nine tank cars of the defendant, described as follows:

"Two Tank Cars, Type A, 10,000 gallon capacity, 50 ton truck, cast iron frame tanks, made by Standard Tank Car Company in September, 1921, and numbered SRRX 114 and 115.

"Seven Type A 8,050 gallon capacity, 50 ton truck, cast iron frame tanks, made by Standard Tank Car Company in September, 1919, and numbered SRRX 116, 117, 118, 119, 120, 124 and 125.

"The chattel mortgage securing the payment of said indebtedness was filed for record with the county clerk of Tarrant County, Texas, on the 5th day of June, 1928; there is now due and owing on said indebtedness the sum of $4,000.00 on the principal of said note, together with interest at the rate of eight per cent per annum on said amount from September 1st, 1931. About ninety days before the filing of this receivership suit, or about the 30th day of April, 1935, and after the above note was in default, said defendant, through its President, agreed to deliver to the said James Harrison said tank cars in full and final satisfaction of the debt against said defendant held by said intervener. This offer was accepted and the

agreement made, and said tank cars were delivered by the defendant to said intervener Harrison and said indebtedness of the said intervener Harrison against the defendant was cancelled in full, and said intervener asked the defendant to dispose of said tank cars for him, and left the tank cars with the defendant for the purpose of having them sold, and the money paid to him. As a result of said agreement the title to said tank cars passed to the said James Harrison, the intervener, prior to this receivership, and the receiver has no right, title or interest in or to the same.

"10. It is therefore ordered, adjudged and decreed that the receiver in this case, W. M. L. Johnson, execute, acknowledge and deliver to the said intervener, James Harrison, a bill of sale to said tank cars above described, releasing and quit-claiming to said intervener all the right, title and interest of the receiver and of the Star Refining & Producing Company, and of the creditors of said company in and to said tank cars above described, in full and final payment of all amounts due said James Harrison on the note above described.

"11. On the 7th day of October, 1931, the defendant executed, acknowledged and delivered to Commerce 'Trust Company of Fort Worth, Texas, as trustee, its deed of trust to secure its bonds in the principal sum of $150,000.00 issued on that date, and said deed of trust was recorded on the 7th day of October, 1921, in the deed of trust records of Tarrant County, Texas, and is recorded in Vol. 191, page 101, of the deed of trust records of said county.

"12. On the 1st day of June, 1922, the defendant executed, acknowledged and delivered to Commerce Trust Company, of Fort Worth, Texas, as trustee; a supplemental deed of trust covering some additional property to secure the payment of said bonds, and said deed of trust was filed for record in the deed of trust records of Tarrant County, Texas, on the 1st day of June, 1922, and is recorded in Vol. 193, p. 464, of the deed of trust records of said county.

"13. On the 1st day of June, 1923, the defendant executed, acknowledged and delivered to Farmers & Mechanics National Bank of Fort Worth, Texas, trustee, a deed of trust securing an issue of $150,-000.00 worth of its bonds, payable five years after the date thereof, at Fort Worth, Texas, and said deed of trust was filed for record on the 1st day of June, 1923, in the deed of trust records of Tarrant County, Texas, and said deed of trust is recorded in Vol. 221, page 38, of the deed of trust records of said county.

"14. On the 1st day of June, 1928, the defendant executed, acknowledged and delivered a deed of trust to The Continental National Bank of Fort Worth, Texas, trustee, securing its bonds having a par value of $45,000.00, payable five years after the date thereof, and said deed of trust was recorded on the 1st day of June, 1928, in the deed of trust records of Tarrant County, Texas, and is recorded in Vol. 373, page 10, of such deed of trust records.

"15. On the 1st day of June, 1933, the defendant executed, acknowledged and delivered to' the Continental National Bank of Fort Worth, Texas, trustee, a deed of trust securing its bonds having a par value of $45,000.00, executed by the defendant, payable five years after the date thereof, and said deed of trust was recorded in the deed of trust records of Tarrant County, Texas, on the 22nd day of June, 1933, and is recorded in Vol. 435, page 318 of the deed records of said county.

"16. Each of said bond issues after the first one was issued in extension and renewal, and in lieu of the bonds still outstanding at the time of each of such issue; all of the bonds secured by said deeds of trust were executed by the defendant, and made payable to bearer, and as each bond issue was issued, after the first, the bonds then outstanding were called in, and the bonds of the new issue were traded or given to the holders of the bonds of the old issue in exchange for the bonds of the old or previous issue, and the $45,000.00 bond issue of the defendant now outstanding and secured by the deed of trust dated June 1st, 1933, are bonds which represent renewals and extensions of the original indebtedness created by the issue of bonds dated October 7th, 1921, and secured by the deed of trust of that date, except to the extent to which said indebtedness has been reduced by the payment or cancellation of the bonds of'the earlier issues. The bonds dated June 1st, 1933, were in default prior to the date on which this suit was filed, and no payments

have been made on the principal or interest of said bonds since this suit was filed. The names of the bondholders, the numbers of their bonds, and the amounts owned by each are as follows:

equipment, files and every office supply and fixture of every character in and about the office of the company.

"All real estate, office furniture, supplies and equipment acquired by the company,

| Name | Numbers of Bonds | Par Value of Bonds |
|---|---|---|
| W. B. Harrison | No. 1 | $ 100.00 |
| S. H. Culberson Est. | 2, 3, 4 | 300.00 |
| James Harrison | 5, 6 | 200.00 |
| Oscar Vogel | 7, 8 | 200.00 |
| B. K. Smith | 9, 10, 11 | 300.00 |
| L. A. Greene | 12, 13, 14 | 300.00 |
| J. B. Craddock, Gd. | 15, 16, 17 | 300.00 |
| J. N. Moon | 18, 19 | 200.00 |
| W. M. Harrison, Jr. | 20–24 both inc. | 500.00 |
| James Harrison | 25–35 " " | 1,100.00 |
| Purchaser of bonds now held in pledge by A. M. Lockett & Co. Ltd. | 36–53 " " | 1,800.00 |
| James Harrison | 54–62 " " | 900.00 |
| B. J. Wynne | 63–82 " " | 2,000.00 |
| James Harrison | 83–100 " " | 1,800.00 |
| W. B. Harrison | 101–107 " " @ $500.00 | 3,500.00 |
| S. H. Culberson, Est. | 108–134 " " " | 13,500.00 |
| James Harrison (W. B.) | 135–150 " " " | 8,000.00 |
| Herman Gartner | 151–156 " " " | 3,000.00 |
| R. F. Milan | 157–159 " " " | 1,500.00 |
| C. L. Wilson | 160–161 " " " | 1,000.00 |
| Oscar Vogel | 162 " | 500.00 |
| B. K. Smith | 163 " | 500.00 |
| Myrtle Moad | 164 " | 500.00 |
| James Harrison | 165–167 " | 1,500.00 |
| Clara Mabry | 168 " | 500.00 |
| James Harrison | 169 " | 500.00 |
| J. F. King | 170 " | 500.00 |
| | Total | $45,000.00 |

"Said bondholders, with the exceptions hereinafter stated, have a first and prior deed of trust lien upon the property described in said deed of trust of June 1st, 1933, said property being described in said deed of trust as follows:

"All of Blocks Four (4), five (5), six (6), seven (7) and eight (8), Evans Pearson Westwood Addition to the City of Fort Worth, Tarrant County, Texas, together with all and singular the improvements thereon situated, and the appurtenances thereunto belonging.

"All of lots 5, 6, 7 and 8, of Block B, as shown by the corrected map of the town of Carrollton, Dallas County, Texas, which map is filed for record in the office of the County Clerk of Dallas County, Texas, reference to which is hereby made for descriptive purposes.

"All and singular the office furniture, desks, chairs, cabinets, rugs, mechanical

and all additions, accretions, improvements, installations and property of every character whatsoever, secured and owned by the company.

"Said lien is inferior to the lien of Lockett & Company upon the property described in paragraph 3 hereof, and does not attach to the tank cars described in paragraph 9 hereof.

"18. All of said bonds were acquired by the present owners from the defendant company prior to the date the State of Texas or the Federal Government secured a lien for gasoline taxes owing to them upon any of the property of the defendant, with the following exceptions:

| Name | Number of Bonds | Par Value of Bonds |
|---|---|---|
| B. J. Wynne | 68–82 both inc. | $2000.00 |
| Myrtle Moad | 164 | 500.00 |
| Clara Mabry | 168 | 500.00 |

"19. The lien of the United States Government for gasoline taxes claimed by it in this case first accrued on the 26th day of January, 1933, to secure the payment of the sum of $41.58 and prior to that time the United States Government had no lien upon any property of the defendant to secure it in the payment of its gasoline taxes.

"20. On the date this suit was filed, April 30th, 1935, the defendant corporation was insolvent, and it has been insolvent ever since said date up to the present time.

"21. The lien of the United States Government and the lien of the State of Texas for taxes as claimed by them, are prior and superior to the lien of all the bondholders who acquired their bonds from the defendant company after the liens of the State of Texas and of the United States Government had respectively attached on the dates above set forth.

"22. As between the State of Texas and the United States Government the lien of the United States Government is first prior, and superior upon the property of the defendant, and the United States Government is entitled to full payment of its claim before any sum of money is paid to the State of Texas on its claim filed herein.

"23. It is further ordered, adjudged and decreed that the claims of the collector of internal revenue are allowed and that the United States Government have judgment for the full amount of its claim against the defendant for taxes, penalties and interest in the total amount of $15,125.93, of which $1,935.86 represents interest thereon as provided by law to the date of this judgment. That the specific amounts and periods covered are as set out below, and that the United States has a lien upon all the assets of the Star Refining and Producing Company for the amounts and from the dates as set out below.

"(The priorities as to various liens are set out in detail herein.)

"All the assets of the defendant except one lot in Carrollton, Dallas County, Texas, were at all times material in this proceeding situated in Tarrant County, Texas, and notices of liens of the said taxes were filed with the county clerk and recorder of Tarrant County, Texas, as follows:

| Amount of Tax | Date of Filing Notice of Liens |
|---|---|
| $ 41.58 | Feb. 15, 1933 |
| 137.96 | Mar. 8, 1933 |
| 193.72 | Nov. 1, 1935 |
| 3,771.36 | Nov. 1, 1935 |
| 4,834.86 | Nov. 1, 1935 |
| 1,629.66 | Nov. 1, 1935 |
| 2,101.01 | Sept. 17, 1935 |
| 371.78 | Nov. 1, 1935 |

"25. It is further ordered, adjudged and decreed that the State of Texas do have and recover judgment of the defendant Star Refining & Producing Company, a corporation, and its Receiver, W. M. L. Johnson, for the full amount of its claims, principal, interest, fines and penalties, in a total amount as follows: $25,068.60.

"The lien of the State of Texas for taxes set forth by it in its claim first accrued on the ——— day of ———, 19—, and prior to that time the State of Texas had no lien upon any property of the defendant.

"26. It is further ordered, adjudged and decreed that the following named creditors have judgment against the defendant, Star Refining & Producing Company, a corporation, and against the receiver, W. M. L. Johnson, for the full amount of their claims as follows:

"(Omitting the names and amounts, since those creditors were not awarded any liens on the property.)

"27. It is further ordered, adjudged and decreed that all intervening creditors named herein have and are hereby granted judgment against the defendant, Star Refining

| Tax | Period | Amounts of Tax | Date Liens Attached |
|---|---|---|---|
| Gasoline | Sept. 1932 | 41.58 | Jan. 26, 1933 |
| Gasoline | Oct. 1932 | 137.96 | Mar. 27, 1933 |
| Gasoline | Nov. 1932 | 193.72 | June 10, 1933 |
| Gasoline | Dec. 1933 | 3,771.36 | Feb. 26, 1934 |
| Gasoline | Nov. 1933 | 4,834.86 | Mar. 16, 1934 |
| Gasoline | Mar. 1935 | 1,629.66 | July 27, 1935 |
| Gasoline | Apr. 1935 | 2,101.01 | June 1, 1935 |
| Capital Stock | Year 6/30–1935 | 44.00 | Nov. 1, 1935 |
| Income Tax | Year 1933 | 371.78 | July 10, 1935 |

& Producing Company, a corporation, for all court costs incurred in this case.

"28. It is further ordered, adjudged and decreed that all claims shall bear interest after this date at the rate of six per cent per annum upon the amounts hereinabove set out, except where otherwise expressly provided for herein.

"29. It is further ordered, adjudged and decreed that except· as hereinabove specified no creditor of the defendant is entitled to judgment against said defendant for any amount, and all claimants not specifically mentioned in this judgment are hereby denied any relief or judgment against the defendant, Star Refining & Producing Company.

"It is further ordered, adjudged and decreed that when the property described in said deed of trust of June 1st, 1933, is sold, that the proceeds of the sale be applied as follows:

"First, to the payment of all court costs incurred in this case.

"Second, to the payment of the bonds whose names and the amount of whose claims are set forth in paragraph 16 hereof, with the exceptions noted in paragraph 18 hereof. That the money be distributed ratably among the said bondholders in the proportion which the amount of their claim bears to the total amount of the bond issue.

"Third, if any amount remains after the payment of the above amounts, that it be paid to the respective claimants entitled thereto, as herein set forth.

"That the receiver proceed to attempt to work up a sale of said property described in said deed of trust, as hereinabove set forth, at private sale, for the best possible consideration, and that he report back to this court at its regular term at Canton, Texas, on the 14th day of September, 1936, showing what success he has had in making a sale of said property. That the receiver is authorized to attempt to make said sale either in bulk or in parcels, altogether or separately for cash, as may to him see best, and that if the bondholders above mentioned care to make a bid on said property that they be allowed to credit their bonds on the bid to the extent to which said bonds were held to be secured by a lien prior to the State of Texas and the United States Government.

"When the claims of the bondholders, as set forth in paragraph 16, with the exceptions noted in paragraph 18 hereof, have been paid in full from the proceeds of the sale of the property described in the deed of trust, the receiver then shall pay to the United States Government its claim in full in the sum of $15,125.93, and when said claim has been paid in full the receiver then shall pay to the State of Texas its claim in full for taxes, penalties and interest, as presented in this case, and if any funds are then remaining, the receiver then shall pay to those bondholders whose claims have been held, as above stated in paragraph 18 to be inferior to the lien of the State of Texas and the United States Government, the amount owing to them in full, and if any amount then remains, the receiver shall pay to the general creditors the amount of their claims in full. · Wherever in this judgment it is ordered that the receiver pay any claims in full, the money on hand shall be prorated among the creditors found to be entitled thereto in the proportion which their respective claims bear to the total claims of their particular class which are then in order to be paid, according to the terms of this judgment.

"To all of which the intervener, State of Texas, thereupon in open court objected and excepted, and gave notice of appeal to the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas, at Dallas, Texas.

"[Signed]  G. O. Crisp, Judge."

The State of Texas, alone, has appealed, and the case has been transferred to this court from the Court of Civil Appeals of Dallas, by order of the Supreme Court.

By different assignments of error and propositions thereunder, it is insisted that, by virtue of the provisions of article 7065a—7, Vernon's Ann.Tex.Civ.Statutes, a lien was fixed on the assets in controversy superior to the prior rights in the assets decreed to the bondholders and to interveners, A. M. Lockett & Co., Ltd., and James Harrison, notwithstanding the fact that the state's tax lien did not accrue until after those rights had arisen.

Appellant stresses the decisions in State v. Bank of Mineral Wells, Tex.Civ.App., 251 S.W. 1107, and Preston v. Anderson County Levee Imp. Dist. No. 2, Tex.Civ. App., 261 S.W. 1077, in both of which writs of error were refused. In those cases it was held that assessment liens levied by a levee improvement district took precedence over vendor's liens acquired on lands in the district before the district was created, following the general rule that "all

property rights are acquired and held, and all contracts made, subject to the authority of the State to levy its taxes and collect its revenue for the support of the government." 9 Tex.Jur. § 114, p. 549.

The taxes there involved were ad valorem taxes, but appellant argues that the same rule should govern collection of occupation taxes that are likewise designed for' support of the government. In that connection this is said in appellant's brief: "Because of the absence of decisions in Texas turning upon an occupation or excise tax, such as the one in the case at bar, we do not deem it amiss to cite as persuasive authority the decisions of the courts of last resort of several of our sister states to indicate the trend of the recent decisions to uphold the priority of liens given to secure such taxes. These cases are Motor Dealers Credit .Corporation v. Heise, 166 S.C. 389, 164 S.E. 900; Atlanta Trust Co. v. Atlanta Realty Corp. et al.; 177 Ga. 581, 170 S.E. 791; Ervin v. State of Alabama, 5 Cir., 80 F.2d 432; State Revenue Commission v. Rich, 49 Ga.App. 271, 175 S.E. 394, 395."

█ We deem it unnecessary to determine the merits of that particular question. For it is our conclusion that the state's claim of statutory lien on the property in controversy must fail, since it applies to the real estate described in the foreclosure decree as well as other assets of a personal character, and without any separation of the one from the other in the matter of fixing liens thereon, and the state makes no claim of right for such a separation. Nor is there any showing that the lien and personalty were assessed separately, with the values of each separately listed as required by statute. 40 Tex.Jur. §§ 91 and 92, p. 129.

█ The lien prescribed in article 7065a—7 of the statutes on land on which the refinery and other property is located, was taxable as realty, and the tax thereon was essentially an ad valorem tax. The same is true of the lien on machinery and other personalty. 40 Tex.Jur. § 2, p. 11; § 62, p. 94; 61 C.J. p. 65; 26 R.C.L. § 2, p. 13; § 5, p. 18.

█ It is now a settled rule of decisions in this state that the lien given by article 8, section 15, of our Constitution, for taxes against any separate tract of land, is only for taxes assessed against it considered separately from taxes assessed against other property. The decision of our Supreme

Court, in Richey v. Moor, 112 Tex. 493, 249 S.W. 172, opinion by Chief Justice Cureton, definitely settles that question, and that decision has been cited and followed in many subsequent decisions, including opinion of Justice Critz in Holt v. Wichita County Water Improvement Dist., Tex.Com.App., 63 S.W.2d 369.

█ We conclude further that to subject the machinery and other equipments on defendant's premises for the occupation taxes in question, in addition to the ad valorem taxes due thereon under the general laws, would violate the provisions of article 8, section 9, of the Constitution, fixing the maximum of taxes that may be levied on property in this state, 40 Tex.Jur. § 37, p. 58; § 41, p. 63, and also a violation of the provisions of section 1, article 8, of the Constitution, requiring taxation to be equal and uniform. 40 Tex.Jur. § 119, p. 164, and decisions there cited, including Lively v. Missouri, K. & T. Ry. Co., 102 Tex. 545, 120 S.W. 852.

The foregoing conclusions render it unnecessary to determine the merits of the further contention presented in appellee's brief that the occupation tax in question is inferior to the prior mortgage liens acquired before the enactment of article 7065a, since to give priority to the tax lien would violate the constitutional inhibition against enactment of a law that would destroy vested property rights. It is admitted that an ad valorem tax on realty takes precedence over prior mortgage liens thereon, from necessity, but it is argued that no necessity exists for making such a tax also a lien on personalty which is subject to a lien for its own taxes, under other statutes. In this connection it is argued that in event of disposition of the personalty by the owner or its removal or destruction by him or another, then it would be unreasonable to say that realty, or other property covered by a prior valid mortgage lien held by another, could be subjected to payment of the occupation or personal tax, and thereby destroy a vested property right in the mortgage holder. In support of that contention, attention is called to decisions cited in Scottish American Mortgage Co. v. Minidoka County, 47 Idaho 33, 272 P. 498, beginning on page 502 of that volume, 65 A.L.R. 663.

For the same reason it is unnecessary to determine, and we do not determine, the merits of the further contention of appellees that article 7065a is discriminatory and unconstitutional, for the further reason that by

334

article 7065a—13, a distributor is in effect exempted from the tax imposed by article 7065a—8, for motor fuel appropriated by him "for operating or propelling any stationary gas engine or tractor used for agricultural purposes, motor boats, air craft or for any other purpose other than use in a motor vehicle operated or intended to be operated in whole or in part upon any of the public highways, roads and streets of the State of Texas."

If we are correct in our foregoing conclusions that the state did not have a valid lien on the assets in controversy, then it would follow that it is not in position to challenge the validity of the lien decreed in favor of the federal government.

But even though it should be said that by virtue of the provisions of article 7065a—7 the state was given a lien on the assets in controversy, we have reached the conclusion that the same was subordinate and inferior to the tax lien in favor of the federal government. The first ground of complaint is that the evidence showed conclusively the solvency of the defendant company at the time the suit was filed, and therefore the lien of the federal government for taxes is controlled by the provisions of title 26, §§ 1560, 1561, and 1562, U.S.C.A. Further, that under provisions of section 1562, such lien would not be valid as against the lien of the state, until filing of notice thereof, as required by that article; that the state's lien attached before compliance with those requirements and hence took precedence over the lien for federal taxes. Without undertaking a review of the evidence, we deem it sufficient to say that it was fully sufficient to support the finding of the trial court on that issue, and therefore it cannot be disturbed. 3 Tex.Jur. par. 764, p. 1088; par. 771, p. 1102; and cases there cited. Furthermore, the state was not a "mortgagee, purchaser or judgment creditor" and hence was in no position to invoke those statutory provisions.

Section 191, title 31 U.S.C.A., reads: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts,

makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

In Price v. U. S., 269 U.S. 492, 46 S.Ct. 180, 182, 70 L.Ed. 373, it appeared that at the time of the institution of the suit by a creditor for the appointment of a receiver, the defendant corporation was not insolvent, but was in fact solvent, although in failing condition and in danger of insolvency and without funds to pay debts due and owing, and some of its creditors were pressing their claims and others had commenced suit. Those facts were alleged in the petition of plaintiff for appointment of a receiver. The defendant filed its answer, admitting the allegations in the petition and joining in prayer for the appointment of a receiver, as was done in the instant suit. We quote the following from the opinion in that case:

"Defendant made a voluntary assignment of its property within the meaning of section 3466 [31 U.S.C.A. § 191].

"By answering and joining in the prayer of the complaint, defendant co-operated with the plaintiff to secure the appointment of a receiver to whom it immediately handed over possession and control of all its property and business. While in effect the complaint alleged that defendant was solvent, the facts set forth indicate that it was in a failing condition. And it was found to be insolvent within a short time after the appointment of the receiver. When the assets turned out to be less than the debts, the creditors were entitled to have them dealt with as a trust fund and distributed among them according to their rights and priorities. Under the statute, claims of the United States must first be satisfied. Bramwell v. United States Fidelity & Guaranty Co., 269 U.S. 483, 46 S.Ct. 176, 70 L.Ed. 368, and United States v. Butterworth-Judson Corp., 269 U.S. 504, 46 S.Ct. 179, 70 L.Ed. 380, decided this day."

The holding of the Supreme Court in the later case of People of State of New York v. Maclay, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754, was to the same effect. In the case of County of Spokane v. U. S., 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621, it was held that in case of insolvency, within the provisions of section 3466, U.S. Rev.St., section 191, 31 U.S.C.A., the United

States was entitled to have its taxes paid in preference to the taxes claimed by the county of Spokane, Wash. The same preference in favor of the federal government was decreed in New York v. Maclay, supra, 288 U.S. 290, 53 S.Ct. 323, 77 L. Ed. 754. To the same effect were many other decisions, such as Decker v. Decker Building Material Co., 118 N.J.Eq. 177, 178 A. 196; In re Lincoln Chair & Novelty Co., Inc., 274 N.Y. 353, 9 N.E.2d 7, by the Court of Appeals of the State of New York. Other decisions of like effect might be cited.

Hence, even though it be true, as insisted by appellant, the defendant company in this case was not insolvent when the suit was instituted, nevertheless it was found upon ample proof to be insolvent thereafter, and since the action of the defendant company, in admitting insolvency and consenting to the appointment of a receiver, constituted a voluntary assignment of its property, within the meaning of article 3466, 31 U.S.C.A. § 191, the federal government acquired a prior lien for its taxes under title 11, U.S.C.A. § 104, without compliance with the requirements of sections 1560, 1561 and 1562, invoked by the state, although it did file notices of its lien in compliance with those statutes.

For the reasons stated, all assignments of error are overruled, and the judgment of the trial court is affirmed.