THE STATE OF TEXAS ET AL V. W. L. NIX ET AL.

No. 7574. Decided December 6, 1939.
Rehearing overruled March 6, 1940.
(133 S. W., 2d Series, 963.)

*Gerald C. Mann,* Attorney General, *Pat M. Neff, Jr.,* and *Geo. W. Barcus,* Assistants Attorney General, for appellants.

*Wm. Madden Hill, J. L. Blackstrom, B. W. Berg, Clyde O. Eastus,* and *Frank B. Potter,* all of Dallas, and *Steve M. King,* of Beaumont, for appellees.

MR. JUSTICE SHARP delivered the opinion of the Court.

This case is before us on certified questions from the Court of Civil Appeals for the Second District. The statement and certified questions read as follows:

"The appeal pending before this court in the above styled cause grows out of a judgment rendered by the District Court of Gregg County, in favor of Howard Dailey, as intervening plaintiff, against W. L. Nix, in which Dailey was awarded a recovery for a portion of the amount sued for, the establishment of the validity and priority of his chattel mortgage lien

on certain personal property, and the right to have his judgment paid out of certain funds held in the registry of the court. The funds from which payment was ordered were placed in the registry of the court by a previously appointed receiver of the property of the defendant, Nix.

"W. L. Nix was, for a time, engaged in the refinery business, under a trade name of Texas Refinery. He manufactured and distributed motor fuel and thereby became liable for the payment of certain taxes thereon to the United States and to the State of Texas. He failed to pay certain of these taxes, and when suit was instituted against him by the original owner of certain notes owing and to foreclose certain chattel mortgage liens previously executed by him to secure their payment, a receiver was appointed, who, under orders of the court, leased the refinery plant for a time and later sold its physical assets. The proceeds coming into the receiver's hands were deposited in the registry of the court.

"We believe that the following statement from the entire record will suffice to place before the Court the points involved:

"M. R. Ingram sued W. L. Nix, doing business in the trade name of Texas Refinery, and Heartfield Refinery Company, Inc., in a district court of Gregg County, Texas, for recovery on a note in the principal sum of $1,103.49, with interest at 8% per annum from its date along with the usual and customary ten per cent attorney fees, seeking a foreclosure of a chattel mortgage lien on six 250-barrel run down tanks, and one 1000-barrel storage tank, alleged to be a part of the equipment used in connection with a refinery. The note and mortgage were alleged to have been executed by Heartfield Refining Company, Inc., to plaintiff, on May 11th, 1933, and that the chattel mortgage lien was forthwith filed for record.

"Further allegations are to the effect that subsequent to the execution and delivery of the note and mortgage, Heartfield Refinery Company, Inc., for a valuable consideration, sold and delivered to defendant, W. L. Nix, the mortgaged property, and that Nix assumed to pay plaintiff said indebtedness evidenced by the note.

"Plaintiff's pleadings further show that the indebtedness is past due and unpaid, that demand has been made therefor and that Nix is insolvent. Other allegations state facts which, if true, would authorize the appointment of a receiver for the business operated by Nix.

"Prayer was for the debt and foreclosure of the chattel mortgage lien and for a receiver; that a sale of the property by the receiver be ordered and that the proceeds of such sale

be applied to the liquidation of plaintiff's debt and for general relief.

"After notice, the court heard the application and entered an order appointing a receiver of the business operated by W. L. Nix, in which order, among other things, it is recited: '* * * And the plaintiff appearing by counsel and the defendant having appeared, and plaintiff having announced ready on his application, the court having read the verified oath of complaint and hearing the statement and admissions in open court, is of the opinion and finds that the same presents the proper case authorizing the appointment of a receiver, ex parte, and for granting the relief shown in this order.' J. G. Strong was appointed receiver, his bond set and his duties defined.

"The Federal Government, the State of Texas and R. P. Ash intervened as creditors of W. L. Nix. Ash's claims consisted of two notes secured by chattel mortgages. The first note was for $1,750.00, dated April 27, 1933, with 8% interest per annum from date and ten per cent attorney fees, secured by a chattel mortgage lien on what was known as the Heartfield Refining Company plant (excepting the part previously mortgaged to plaintiff). Ash's second note was in the sum of $4,651.86, dated September 19th, 1933, with 8% interest per annum from date and attorney fees, secured by a chattel mortgage on one 1500-barrel capacity Pipe and Still, Water Cooling Tower, Laboratory Building and Equipment, Pipe and Equipment in Water Well, 2000-barrel capacity bubble tower, Bath house and equipment, office furniture, typewriter and filing cabinets. It was alleged these notes were both due and unpaid. Prayer in that intervention was for debt and foreclosure of the lien on the property described.

"The State of Texas intervened under its claim for $28,870.16, then due the State by W. L. Nix for taxes, penalty and interest, on motor fuel manufactured and distributed, upon which the tax had not been paid under Article 7065a, Vernon's Civil Statutes, et seq., and for a foreclosure of its alleged first and preferred lien on all the property of W. L. Nix, including that described in plaintiff's and Ash's alleged chattel mortgages.

"The United States, acting by and through W. A. Thomas, Collector of Internal Revenue for the Second District of Texas, intervened, made proof of and asked for judgment for its debt of $20,907.61, for taxes and penalties due on motor fuels manufactured and sold by Nix, for which no payment had been made. This intervener claimed and asked for a foreclosure of its first and preferred lien on all property of Nix, under and

by virtue of Section 3466 of Revised Statutes of the United States, Section 191, Title 31, U. S. C. A.

"Thereafter, on January 21st, 1938, Howard Dailey was permitted by the court to intervene, as the sole plaintiff, under allegations that he had acquired all the rights in the subject matter theretofore held by the original plaintiff, M. R. Ingram, and intervener R. P. Ash. An amended petition was at that time filed by intervener Dailey, alleging the indebtedness and liens acquired by him, largely in the same language previously set out by Ingram and Ash. Further allegations were made that the receiver, theretofore appointed by the court, had, under orders of the court, sold the assets of W. L. Nix, doing business in the name of Texas Refinery, and had turned into the registry of the court (less costs and expenses incurred) the total sum of $7,466.92.

"Prayer was for allowance of his indebtedness, that he be given judgment for the amount and that his claim and liens be decreed as prior and superior to all others of the parties, whether plaintiff, defendants or interveners, and that an order be entered directing payment from the funds in the registry of the court, for costs and general relief.

"Interveners, United States and the State of Texas, renewed their pleas of intervention in much the same way as in their original pleadings, and further answered and denied that the substituted plaintiff, Dailey, was entitled to the relief sought. Each intervener insisted upon its respective rights and priorities theretofore pleaded.

"Upon trial to the court, evidence was heard, about which there is little or no controversy under the issues involved here. Judgment was entered favorable to the intervening plaintiff, Dailey, as well also more favorable to the intervener, United States, than to the State of Texas.

"The court found in his judgment that Dailey was the owner of the Ingram note originally sued on and of the two notes owned by Ash at the time of his intervention; that these debts were secured by liens on those parts of the assets of Nix, described in the respective mortgages; that said liens were first and superior as against those asserted by interveners, United States and the State of Texas. There was a further finding that the asserted lien of the United States was prior and superior to that of the State of Texas.

"The court further found that the property upon which Dailey held his first and superior lien constituted eighty per cent of all the assets of Nix coming into the hands of the receiver and sold by him; that out of the sum of $7,466.92 then

in the registry of the court, so deposited by the receiver, certain parts thereof were the proceeds of operation and leasing of the refinery plant, and that $1,618.50 thereof represented the total sum for which the receiver sold said physical assets, and that said sale was the best that could be obtained by the receiver and had been approved by the court. That by reason of the fact that Dailey had a first and superior lien against eighty per cent of said assets, he was entitled to receive from the proceeds of said sale $1,294.80 therefrom, and that the United States having a second lien on said property, it should receive the remainder of said total fund; that said remainder being insufficient to satisfy the United States tax and lien, there was nothing left with which to pay the tax debt and lien of the State. There was a further finding that by agreement of all parties the receiver was entitled to be paid from said fund $75.00 for services rendered, before either plaintiff, Dailey, or the United States should be paid any sum. The decree ordered paid from the fund in the registry of the court, (1) all costs incurred in the suit not previously paid by the receiver, including $75.00 to the receiver; (2) the claim of intervener, Dailey, in the sum of $1,294.80; and (3) the balance to the United States to be applied upon its judgment and claim for taxes. The decree further recites, 'Inasmuch as the claim of the United States as allowed, is greater than the amount of money in the hands of the court, there will be nothing left to be applied on the claim of the State of Texas allowed herein.' "

In a supplement to the certificate, the Court of Civil Appeals added the following statement:

"There is evidence in the record to support the following finding in the judgment rendered by the trial court:

" 'The court finds that the Receiver, J. G. Strong, realized all that could have been realized from the assets of W. L. Nix operating as the Texas Refinery, and that such assets are less than the amount of the liabilities of W. L. Nix operating as the Texas Refinery, and that on November 20, 1933, the date of the institution of this proceedings, and since that date up to the date of this judgment that W. L. Nix, operating as the Texas Refinery and this receivership proceedings was and has been at all time insolvent.' "

Continuing with the original statement:

"The intervener, State of Texas, excepted to the rulings of the court. The United States excepted to that part of the judg-

ment giving intervener, Dailey, a preference lien to that of the Federal Government, and both the United States and the State of Texas gave notice of appeal to the Texarkana Court of Civil Appeals. The State of Texas alone perfected the appeal.

"Both the United States and the State of Texas made proof of their respective claims against Nix for taxes, interest and penalties due and unpaid. Those of the United States, accruing during the months of May, June, July, August, September, October and November, 1933, aggregated $19,914.81. The State of Texas made proof of taxes, interest and penalties to date of trial, due for the months of October and November, 1933, in the aggregate sum of $30,797.69.

"In entering the judgment, the trial court considered the chattel mortgage liens held by intervening plaintiff, Dailey, to be first and prior to those asserted by each the United States and the State of Texas, and that the lien of United States was first and superior to the rights of the State of Texas.

"The United States claimed a first preferred and superior lien under and by virtue of the U. S. Rev. St. Section 3466, Sect. 191, Title 31, U. S. C. A., which reads:

" 'Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed.' "

"In support of its contention that its claim matured into a first and superior lien under the Federal Statute above referred to, the United States relies upon the following authorities: Price v. United States, 269 U. S. 492, 46 Sup. Ct. 180, 70 L. Ed. 373; Hatch v. Morosco Holding Co., Inc., 61 Fed. (2d) 944; Gerson, Beesley & Hampton, Inc. v. Shubert Theater Corp., 7 Fed. Supp. 399; People of the State of N. Y. v. Maclay et al, 288 U. S. 290, 53 Sup. Ct. 323, 77 L. Ed. 754; State of Texas v. Wynne, 113 S. W. (2d) 325; Churchill v. Straus Investing Corp., 27 Fed. Supp. 316.

"The State of Texas claims a first, prior and preferred lien on all the property of the distributor, under Article 7065a, Sect. 7, Vernon's Texas Civil Statutes. The portion of Section 7 relied upon reads, in part, as follows: 'All taxes, fines, pen-

alties and interest due by any distributor to the State shall be a preferred lien, first and prior to any and all other existing liens, contract or statutory, legal or equitable, and regardless of the time such liens originated, upon all the property of the distributor, devoted to or used in his business as a distributor * * *.'

"The State of Texas further relies upon the holdings of our courts, in support of its contention that it has a first, prior and preferred lien, in numerous cases cited, among which it especially emphasizes: State v. Bank of Mineral Wells (Tex. Civ. App.) 251 S. W. 1107; Preston v. Anderson Co. Imp. Dist., 261 S. W. 1077 (writ refused); Kirk v. City of Gorman (Tex. Civ. App.) 283 S. W. 188; Wood v. Scott, 48 S. W. (2d) 1024 (writ refused); Childress County v. State, 127 Texas 343, 92 S. W. (2d) 1011.

"It is contended by the intervening plaintiff below, appellee here, that Article 7065a, Sec. 7, Vernon's Texas Civ. St., relied upon by the State, in so far as it attempts to confer a first, prior and preferred lien on all personal property of the distributor used in connection with his business, to previously created contract liens, such as held by him, is void as being in violation of the provisions of our State Constitution, Article I, Section 16, and of the United States Constitution, Article I, Section 10. Each of which prohibits the passage of ex post facto laws or those which impair the obligation of contracts.

"We had before us recently the case of the State of Texas v. Wynne, reported in 113 S. W. (2d) 325, which involved, among other things, the questions arising in this appeal. A writ of error was granted by that Honorable Court in that case, and has not yet been reached for consideration.

"We have expressed our views in this case, as shown by the accompanying tentative opinion, but in view of the status of the Wynne Case, supra, we deem it·advisable to certify the issues involved here to that Honorable Court. The questions involved and which we desire to have answered are:

"1. Do the provisions of Section 7 of Article 7065a, V. T. C. S., which give to the State of Texas 'a preferred lien, first and prior to any and all other existing liens' upon all the property of the distributor, devoted to or used in connection with the business as a distributor, to secure the payment to the State, for all taxes, penalties and interest due the State, under the Motor Fuel Act, violate the provisions of Article I, Section 16, of the State Constitution and Article I, Section 10, of the U. S. Constitution?

"2. Under the conditions and facts shown in this case, did

the trial court commit an error in holding that the claim of the United States for taxes, penalties and interest should be paid out of the funds in the registry of the court before the similar claims of the State of Texas were paid?"

For the reasons given in an opinion handed down by this Court on this date in the case of State of Texas v. B. J. Wynne et al, (this volume, page 455) 133 S. W. (2d) 951, we answer Question No. 1 "No," and Question No. 2 "Yes."

Opinion delivered December 6, 1939.

Rehearing overruled March 6, 1940.